2015 Ark. App. 257

**Michael WEBB, Jr., Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR–14–279**

Court of Appeals of Arkansas,
DIVISIONS I, II & III.

Opinion Delivered April 22, 2015

Timothy R. Leonard, for appellant.

Dustin McDaniel, Att'y Gen., by: Nicana C. Sherman, Ass't Att'y Gen., for appellee.

RITA W. GRUBER, Judge

Michael Webb has complied with our order to supplement the record before us, *see Webb v. State*, 2014 Ark. App. 637, 2014 WL 5849234, and we now address the merits of his appeal. On November 15, 2010, the circuit court sentenced Webb to three years' probation on his negotiated plea of guilty to possession of marijuana with intent to deliver and possession of drug paraphernalia—Class C felonies. In a sentencing order entered on December 2, 2013, his probation was revoked and he was sentenced to concurrent terms of six years' imprisonment on each count. Webb appeals the revocation, raising two points. He contends (1) that the court's finding that he violated terms of his probation was clearly against the preponderance of the

evidence and (2) that his due-process rights were violated because the court considered matters not contained in the State's petition to revoke.[1] We affirm.

Webb's probation was subject to written conditions, and the circuit court provided him the opportunity to have his record expunged if he successfully completed drug court. On August 8, 2013, the State filed a petition to revoke his probation based on violations of the following conditions: "# 1 Laws, # 5 Weapons, # 6 Controlled Substances, # 14 Fines, # 15: Court costs, # 16 Public Defenders Fee, and # 23 Additional Costs." A violation report that accompanied the petition further specified:

1. *Not commit any felony, misdemeanor or other criminal offense punishable by confinement in jail or prison.*
On August 6, 2013, Webb was arrested for the offenses of Driving on Suspended License, Theft by Receiving—2 cts, and Possession of Firearm by Certain Persons in Stuttgart, Arkansas.

5. *Not purchase, own, possess, or control any deadly weapons [or] firearms.*
According to reports received from the Stuttgart Police Department, on August 6, 2013, Webb was in possession of a Smith & Wesson .38 Revolver Stainless.

6. *Not possess, buy, consume, sell or distribute any alcoholic beverages, or controlled substances. Do not enter places where alcoholic beverages or controlled substances are used, sold or permitted.*
Webb tested positive for THC on 7/29/2011.

14. *Pay a fine in the amount of $100.00, payment to be made to the Drew County Sheriff's Office at the rate of $___ per month, and pay $5.00*

*monthly installment fee to the sheriff's office for each month you have a fine balance.*
Webb has failed to make any payments to the sheriff's office as directed on this account.

15. *Pay $165.00 Court Costs to the Sheriff's Office.*
Webb has failed to [make any] payments on this account as directed.

16. *Pay $100.00 Public Defender fee to the Sheriff's Office.*
Webb has failed to make any payments on this account as directed.

23. *Additional Conditions: $250.00 DNA Fee, $20.00 Booking Fee, $125.00 Drug Crime Fee*
Webb has failed to make any payments on this account as directed.

The State presented the following testimony at the revocation hearing, conducted on December 2, 2013. Webb's probation officer, Sharon Anderson, testified that she became involved in the case after he was arrested in Stuttgart, Arkansas, for driving on a suspended license, theft by receiving, and possession of a firearm. She testified that although Webb made no payments on his court-ordered obligations and tested positive for THC in July 2011, the Stuttgart "incident" was the only reason the revocation petition was filed. The circuit court noted, "Clearly, we're here because of what happened in Stuttgart."

Sgt. Kyle Stokes of the Stuttgart Police Department testified that on August 6, 2013, he made a traffic stop of a car that Webb was driving, in which Webb's friend Tracy Wright was the sole passenger. According to Sergeant Stokes, Webb was arrested for driving on a suspended license and police conducted an inventory search

---

1. The State responds that the court did not err by finding that Webb violated terms of his probation; it does not respond to the second point.

of the vehicle before towing it. There was a .38 revolver under the front passenger seat and a small, locked safe in the back seat; officers detected the strong smell of marijuana emanating from the safe, which "had a combination and possibly a key, too." Capt. Dean Mannis of the Tri–County Drug Task Force testified that the safe was in plain view in the back seat and that a check of the revolver's serial number revealed that the firearm had been stolen in Jacksonville, Arkansas. When Captain Mannis asked Webb about the safe, he replied that he did not have a key, did not know what was in the safe, and "was just making a delivery for somebody." After obtaining a search warrant and opening the safe with a screwdriver, Captain Mannis discovered what he suspected to be cocaine and marijuana. Webb, who had $460 cash on his person, was jailed on charges of theft by receiving and felon in possession of a firearm.

The State concluded its case, and the court asked Webb if he wished to present his own proof. Webb responded, "[B]efore I do, I would move ..., since it was not alleged in the revocation petition anything about possession of drugs or any charges relating to drugs, that the Court disregard any testimony about the safe.... It's not alleged in the revocation petition at all." The following colloquy then occurred:

> THE COURT: Well, why didn't you make your objection [on cross examination] when you started bringing it out? You didn't think about it then; you thought about it just then. The objection would have probably been overruled. The police report that you were furnished, did it have anything about drugs in it?
> DEFENSE COUNSEL: No.
>
> . . . .
>
> PROSECUTOR: Your Honor, it talks about the safe had a strong odor of marijuana coming from it.

THE COURT: Okay. That's all I need to hear.

DEFENSE COUNSEL: But it does not say he was arrested for—

THE COURT: It doesn't matter if he was arrested for it. The police report puts you on notice—

. . . .

THE COURT: If you had had any—If you had wanted to, you'd call the officer long before now and ask him, "What did you find?"

DEFENSE COUNSEL: The police report said he was arrested for theft by receiving and firearm by a certain person. It does not say anything about being arrested for any type of drugs or what was found in any safe.

THE COURT: But drugs were smelled in the car. I'm saying, it just can't come as a complete surprise to you. What would you have done differently in this case if he would have put it in big, bold caps, "And by the way, they found some pot in the safe," how would you have tried this case any differently? You wouldn't have; and you know it and I know it. Thank you. You're overruled.

In the case for the defense, Tracy Wright testified that the gun was his and that Webb was unaware of its being in the vehicle. Webb also testified, denying any knowledge that the gun or drugs were in the vehicle, which belonged to his brother. He said that he did not enroll in a drug-court program because it would have caused him to lose his job, and he explained that the money he was carrying at the time of his arrest came from a workers' compensation check for a recent injury.

The court found that both Webb and Wright were in constructive possession of a firearm and of drugs. The court noted that the gun was found under the passen-

ger seat where Wright was riding; that Webb was driving the car, allegedly owned by his brother; and that

> with respect to the drug, or drugs, in the backseat and in the safe ... there was the smell of marijuana in the vehicle and marijuana was found in the safe. Further, Mr. Webb was found in possession of a substantial amount of cash: four hundred and something dollars. It may have come from a workers' comp. check. But of course if he was working, he wouldn't have been getting a workers' comp. check. But there's no proof that he, here today, other than his testimony, unsupported, that he was working at the time or receiving any pay stubs. He certainly was not paying anything he owed to the State because he's behind on all of that. Hadn't made any payments....

> And the stuff I heard on the stand is a bunch of baloney today. ... And what this Court is faced with is just not failure to pay fees and stuff. I've got drugs, and firearm, and a substantial amount of cash. And I think two years, if you're caught in that situation—With three in the car, four in the car, six in the car, it doesn't matter, you're the driver—it's your brother's car—and you're streetwise and you know what's going on. Three years is not enough when you've got a stolen gun, drugs—And you've already been given every opportunity in the world to straighten up and fly right—and you've got cash on you.

On these findings, the circuit court concluded that Webb had violated condition No. 1, which required that he not commit any felony, misdemeanor, or other criminal offense punishable by confinement in jail or prison. The court then stated, "I don't need to make any findings on any other conditions." Webb's probation was re-

voked, and he was sentenced to six years' imprisonment in the Arkansas Department of Correction.

## I. Whether the Court's Finding that Webb Violated Terms of His Probation Was Clearly Against the Preponderance of the Evidence

In revocation proceedings, the circuit court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of probation. Ark.Code Ann. § 16–93–308(d) (Supp. 2013). Evidence that may not be sufficient to convict can be sufficient to revoke due to the State's lower burden of proof. *Newborn v. State,* 91 Ark. App. 318, 210 S.W.3d 153 (2005). A circuit court's finding in revocation proceedings will not be reversed on appeal unless it is clearly against the preponderance of the evidence. *Id.* Because the preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the superior position of the trial court to decide these matters. *Boyd v. State,* 2014 Ark. App. 336, 2014 WL 2442998.

Constructive possession may be implied when contraband is in the joint control of the accused and another. *Risper v. State,* 2012 Ark. App. 658, at 4, 2012 WL 5834650. Joint occupancy alone is insufficient to establish possession or joint possession; the State must also prove that the accused exercised care, control, and management over the contraband and that the accused knew the matter possessed was contraband. *Id.* There must be some other factor linking the accused to the contraband, such as whether it is in plain view, whether it is found with the accused's personal effects, whether it is found on the same side of a car seat where the accused was sitting or in near proximity, and whether the accused is the owner

of the automobile or exercises dominion and control over it. *Id.* at 4–5.

Webb argues that there was no evidence of additional facts and circumstances indicating that he had knowledge and control over the gun found under the passenger seat or the drugs that were locked in the safe in the back seat. However, the evidence is as follows. The safe was in plain view in the back seat of the car Webb was driving, and the stolen gun was under the passenger seat next to him. A noticeable odor of marijuana was emanating from the safe, which he admitted that he was delivering. He was on probation for possession of marijuana with intent to deliver and for possession of drug paraphernalia, supporting the circuit court's statement that he was "streetwise," and he was carrying a significant sum of money. Although Webb and his passenger claimed that Webb had no knowledge of the gun under the seat, the trial court found their testimony not to be credible.

Again, the credibility of witnesses and the weight of testimony are matters for the trial court rather than the appellate court. *Boyd, supra.* The facts and circumstances of this case, as determined by the trial court, are such that we cannot say that the court clearly erred in finding that Webb constructively possessed the gun and the safe, or that—based upon the smell in the car—he knew that the safe contained marijuana.

II. *Whether Webb's Due-process Rights Were Violated Because the Court Considered Matters Not Contained in the Petition to Revoke*

Webb argues on appeal, as he did to the trial court, that the petition to re-

voke did not notify him of the allegation regarding possession of drugs in the car. We agree, noting that the allegation that he violated condition No. 1, regarding "laws," was based only on his arrest for driving on a suspended license, two counts of theft by receiving, and possession of a firearm by certain persons. However, because the court did not clearly err in finding that Webb constructively possessed the revolver under the passenger seat—a finding that independently supports the violation of conditions—the lack of notice regarding drugs does not require reversal.[2]

Affirmed.

Gladwin, C.J., and Glover, Hixson, and Brown, JJ., agree.

Abramson, Virden, Kinard, and Hoofman, JJ., dissent.

Bart F. Virden, Judge, dissenting.

I respectfully dissent. Here, the trial judge found that Webb violated only the condition that he not commit any criminal offenses, specifically, by possessing controlled substances and a firearm. I would reverse because Webb had no notice that his probation could be revoked for possession of controlled substances. Further, while Webb did have notice of the firearms allegation, there was insufficient evidence to prove constructive possession of the firearm.

I. *The State's Petition for Revocation and Violation Report Afforded Webb No Notice That His Probation Could Be Revoked on the Basis That He Possessed Controlled Substances*

Webb's notice consisted of the State's petition for revocation and the attached

---

**2.** The better course for the circuit court to have taken, particularly in light of evidence that Webb tested positive for THC and failed to make court-ordered payments, would have been to additionally make findings and base the revocation decision on violation of other conditions.

violation report. Although the petition was general, the violation report was specific. In alleging that Webb violated condition # 1 ("Laws"), the State did not include an allegation that Webb possessed controlled substances on August 6, 2013. In alleging that he violated |₉condition # 6 ("Controlled Substances"), only Webb's positive drug test from two years prior is mentioned. Although the violation report refers to Webb's arrest on August 6, 2013, with respect to both conditions, there is no allegation by the State that Webb violated his probation by possessing controlled substances on August 6, 2013.

When Webb objected to the lack of notice, the judge directed defense counsel's attention to the police report from Webb's arrest on August 6, 2013—which was not introduced into evidence—and asserted that it served as notice to Webb of the controlled-substances allegation. According to defense counsel, the police report made no mention of Webb's having possessed controlled substances. Judging by their comments, both the prosecutor and the judge conceded that it did not.

In *Robinson v. State*, 14 Ark. App. 38, 44, 684 S.W.2d 824, 827 (1985), this court stated:

> It is the State's burden to properly notify the appellant regarding the basis upon which it seeks to revoke his suspension, and this Court is unable to relieve the State of that burden by requiring the appellant to present a "last minute" defense to a charge which could have been duly set forth in the State's revocation petition. This is especially true, when as here, the trial court had already expressed in unqualified terms its position that appellant did not have to be charged with battery in order for it to revoke his suspension. Without due notice by the State of its basis for seeking to revoke suspension, a defen-

dant is left to speculate upon what charges might emanate from the State's evidence on the day of the revocation hearing. Procedural due process cannot be met by allowing the State to proceed in the fashion it suggests.

The State failed to sustain its burden of providing Webb with notice that the State sought to revoke his probation on the basis that he possessed controlled substances on August 6, 2013. Although the majority recognizes that Webb received no notice in this regard, they nevertheless affirm Webb's revocation in part on the basis that he constructively possessed |₁₀controlled substances. Because this complete lack of notice is fundamentally unfair, I would reverse on this point.

## II. There Was Insufficient Evidence That Webb Violated a Condition of His Probation by Constructively Possessing a Firearm

The majority contends that there was an alternative basis for revoking Webb's probation given his constructive possession of a firearm. I disagree because there was insufficient evidence presented that Webb constructively possessed the firearm found under his passenger's seat.

To prove constructive possession, the State must show that the accused exercised care, control, and management over the contraband and that the accused knew the matter possessed was contraband. *Johns v. State*, 2011 Ark. App. 217, 378 S.W.3d 857. Joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession. *Id.* There must be some other factor linking the accused to the contraband. *Id.* Other factors to consider include (1) whether the contraband was found in plain view; (2) whether the contraband was found on the defendant's person or with his personal effects; (3) whether the contraband was found on

the same side of the car seat as the defendant or in immediate proximity to him; (4) whether the accused owned the vehicle in question or exercised dominion and control over it; and (5) whether the accused acted suspiciously before or during the arrest. *Id.*

The only factor linking Webb to the firearm was the fact that he exercised dominion and control over the vehicle owned by his brother. The firearm was not in plain view, and it was not found on the same side of the car where Webb was sitting. There was no evidence that the firearm was found among Webb's personal effects. There was also no evidence that Webb acted suspiciously. Webb was stopped for having a broken headlight, and, according to Sergeant Stokes, Webb cooperated during the arrest. Although the trial court disbelieved the testimony by Webb and Wright that Webb had no knowledge that the firearm was in the vehicle, that is not affirmative proof that Webb *did* have knowledge and control over the firearm.

I do not think Webb's driving the car in which a firearm was found was sufficient to allow the trial court to find, by even a preponderance of the evidence, that Webb violated a condition of his probation by constructively possessing a firearm.

Abramson, Kinard, and Hoofman, JJ., join in this dissent.